IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ALFRED E. BRACKENBURY, | CV-05-155-MO |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

MOSMAN, J.

## **BACKGROUND**

Alfred Brackenbury brings this action for judicial review of a partially favorable decision of the Commissioner of Social Security, granting his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act) for the limited period of January 1, 2001 through February 1, 2003. See 42 U.S.C. § 1383(c)(3). This court has jurisdiction under 42 U.S.C. § 405(g).

Mr. Brackenbury protectively filed for SSI on December 8, 1999, alleging disability beginning April, 1998. Since an SSI claimant is not eligible for benefits until one month after he

files for SSI, the relevant period of review for Mr. Brackenbury's SSI application was December 8, 1999 to May 21, 2004 – the date of the Administrative Law Judge's (ALJ) final decision denying benefits. In his partially favorable decision the ALJ found Mr. Brackenbury was disabled for part of this period, but was not disabled from December 8, 1999 to December 31, 2000, and from February 2, 2003 to May 21, 2004.[1]

Mr. Brackenbury alleged disability based on cervical strain, depressive disorder, borderline intellectual functioning, tuberculosis, asthma, neck pain and tendonitis of the right shoulder. He was approximately 47 years old at the time of the ALJ's final decision, and had worked in the past as a print shop helper, tree nurseryman, janitor, car wash attendant, grounds keeper, and machine shop worker. He has an eighth grade education.

On appeal to this court, Mr. Brackenbury claims the ALJ erred by: (1) failing to find his impairments equal to Listed Impairment 12.04 (Affective Disorders), beyond February 1, 2003; (2) providing legally insufficient reasons for rejecting certain medical evidence; (3) providing legally insufficient reasons for rejecting lay witness testimony; (4) improperly assessing his residual functional capacity, and, (5) failing to meet his burden at step five of the sequential evaluation by posing an incomplete hypothetical question to the vocational expert.

For the reasons that follow, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

---

[1] Notably, Mr. Brackenbury claims he applied for disability insurance benefits (DIB) under Title II of the Act on February 4, 2002, but that his application "was not escalated to the ALJ Hearing level and was not considered by the ALJ in this decision." In any event, the final administrative decision before this court does not relate to an application for DIB.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).. To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1512, 416.912. Each step is potentially dispositive.

Here, at step one the ALJ found that Mr. Brackenbury had not engaged in substantial gainful activity since his alleged disability onset date. See 20 C.F.R. § 416.920(b).

At step two the ALJ found that Mr. Brackenbury had the following "severe" impairments: chronic cervical strain, depressive disorder, depressive personality disorder, and borderline intellectual functioning. See 20 C.F.R. § 416.920(c).

At step three the ALJ found that during the period from January 1, 2001 through February 1, 2003 Mr. Brackenbury's depressive disorder equaled Listed Impairment 12.04, and that he was disabled for that period of time. See 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ determined that before and after the period during which Mr. Brackenbury met Listed Impairment 12.04, he had the residual functional capacity (RFC) to perform light level exertional work, with the following limitations: the need for a sit/stand/walk option; only occasional push or pull with his upper extremities; no climbing of ladders, ropes or scaffolds; no activities requiring extension of the neck; no exposure to vibrations; and, no direct public contact. In addition, the ALJ found Mr. Brackenbury was moderately limited in the ability to: execute detailed instructions; respond appropriately to changes in the work setting; work in coordination with others; make simple work-related decisions; maintain socially appropriate behavior; and, set realistic goals. See 20 C.F.R. §§ 416.920(e), 416.945, 416.967.

At step four the ALJ found Mr. Brackenbury could not return to his past relevant work. See 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f).

At step five the ALJ found that from December 8, 1999 to December 31, 2000, and from February 2, 2003 to May 21, 2004, Mr. Brackenbury could perform work existing in significant

numbers in the national economy, such as small products assembler, electrical worker, semi-conductor bonder, and wire worker. See 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## DISCUSSION

**I.      Substantial evidence supports the ALJ's resolution of conflicts in the medical evidence, and his resulting step three finding of partial disability.**

Mr. Brackenbury alleges error in the ALJ's determination that his depressive disorder equaled Listed Impairment 12.04 for only a limited time (January 1, 2001 through February 1, 2003). He argues the ALJ wrongly rejected the medical opinions of Dr. Jenkins and Dr. Kolilis by deferring to Dr. Davis, who testified as a medical expert at the second hearing. According to Mr. Brackenbury, the evaluations performed by Dr. Jenkins and Dr. Kolilis in 2003 establish continuing disability based on equivalency to Listed Impairment 12.04.

The relative weight afforded the opinion of a physician depends upon his or her opportunity to observe and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician is entitled to more weight than the opinion of a physician who only examines the claimant. Id. at 830; see also Gallant v. Heckler, 753 F.2d 1450 (9th Cir.1984). To reject the opinion of an uncontradicted physician the ALJ must provide "clear and convincing reasons," supported by substantial evidence in the record. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-601 (9th Cir. 1999). To reject a physician's opinion that is contradicted by another physician, the ALJ must provide "specific and legitimate" reasons, supported by substantial evidence in the record.

In this case, the disputed medical evidence does not include treating physicians opinions. Dr. Jenkins and Dr. Kolilis both performed one-time examinations of Mr. Brackenbury, and reviewed other record evidence. Dr. Davis, who testified as a medical advisor at the second

Page -5- OPINION AND ORDER

hearing, did not examine Mr. Brackenbury himself, but reviewed the entire medical and testimonial record, including Dr. Jenkins and Dr. Kolilis' evaluations. Since Dr. Davis' opinion partially contradicted the opinions of Dr. Jenkins and Dr. Kolilis, the ALJ needed to provide specific and legitimate reasons for rejecting their opinions, supported by substantial evidence. See Morgan, 169 F.3d at 600-01 (stating that the opinion of a non-examining, testifying medical advisor may serve as substantial evidence when it is supported by other evidence in the record).

### A. Dr. Jenkins

Terry Jenkins, Ph.D., examined Mr. Brackenbury on February 19, 2003, pursuant to a consultative examination ordered by Disability Determination Services. Mr. Brackenbury told Dr. Jenkins he last worked as a janitor in 1998, he was nervous around people and avoided crowds, and that he spent a lot of time walking in the park, watching television, reading the newspaper, and listening to the radio. Mr. Brackenbury also reported that he had never been married, had no children, and that he drank heavily until age 30. Dr. Jenkins diagnosed Mr. Brackenbury with moderate major depressive disorder, recurrent, avoidant personality disorder, possible borderline intellectual functioning, and a GAF$^2$ score of 45, indicating "serious impairment in social, occupation, or school functioning." Dr. Jenkins opined that Mr. Brackenbury had fair memory, adequate concentration, eighth grade reading skills and sixth grade math sills.

Though he rejected the GAF score of 45 (discussed below), the ALJ found Dr. Jenkins' report supported the conclusion that Mr. Brackenbury had "substantially improved" by February,

---

$^2$ GAF refers to Global Assessment of Functioning. The GAF scale is a means of reporting the clinician's judgment of the individual's overall level of functioning on a scale of 1 to 100. Diagnostic and Statistical Manual of Mental Disorders, (4th ed. 1994)(DSM-IV), 30-32.

2003 when compared with earlier medical evidence, and "consistent with the testimony of [Dr. Davis]." Mr. Brackenbury points to no evidence in support of his argument that the ALJ improperly construed Dr. Jenkins' evaluation. Instead he asks this court to draw a different conclusion from Dr. Jenkins' report than the ALJ drew. He contends the limitations assessed by Dr. Jenkins on February 19, 2003 show that he continued to "equal in severity the symptoms, signs and laboratory findings of 12.04A and B."

This court will not substitute its judgment for the Commissioner's. Edlund, 253 F.3d at 1156. This court must weigh all the evidence, and decide if the evidence supports the conclusion drawn by the ALJ, even if more than one conclusion could be reasonably drawn. I find that it does.

To prove that his impairment was equivalent to Listed Impairment 12.04, based on depressive disorder, Mr. Brackenbury had to produce medical evidence showing his impairment was equivalent in severity and duration to the "the set of symptoms, signs and laboratory findings" described in that Listing. 20 C.F.R. § 416.920(a)(4)(iii).

To meet the required level of severity for depressive disorder, 12.04A requires proof of "[m]edically documented persistence, either continuous or intermittent" characterized by at least four of the following symptoms: (a) anhedonia or pervasive loss of interest in almost all activities; (b) appetite disturbance with change in weight; (c) sleep disturbance; (d) psychomotor agitation or retardation; (e) decreased energy; (f) feelings of guilt or worthlessness; (g) difficulty concentrating or thinking; (h) thoughts of suicide; or, (i) hallucinations, delusions, or paranoid thinking. Next, 12.04B requires proof that depressive disorder results in two of the following: (1) marked restriction of activities of daily living, (2) marked difficulties maintaining social

functioning, (3) marked difficulties maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.

Mr. Brackenbury does not point to any contemporaneous medical evidence other than Dr. Jenkins' one-time evaluation to support his allegation of continuing equivalency after February 1, 2003. Thus, the ALJ reasonably determined that Dr. Jenkins' evaluation, especially when compared with other evidence in the record such as Mr. Brackenbury's activities of daily living, vocational and therapeutic counseling records, and statements from his siblings (all discussed below), showed medical improvement rather than continuing equivalency.

    B.        Dr. Kolilis

On September 16, 2003, Mr. Brackenbury was again evaluated at the request of Disability Determination Services, this time by Duane Kolilis, Ph.D. Mr. Brackenbury told Dr. Kolilis that he lived in a house with ten other family members, and that three of his six siblings currently received disability benefits. He reported dropping out of school in the ninth grade because he was not doing well. He said his last job was working as a janitor at PGE Park in 1998, when he hurt his neck, causing ongoing neck pain. Mr. Brackenbury told Dr. Kolilis he could not afford to take medication, and that he stopped attending therapy at Cascadia Mental HealthCare (Cascadia) after six months because he "didn't want to talk about what they wanted, and they thought I was better." On a typical day, Mr. Brackenbury said he washes dishes, sweeps, vacuums, dusts, goes for a walk, reads the newspaper, goes to the park, watches a little television, tapes movies, and rides the bus.

After reviewing records provided to him by Disability Determination Services, such as the counseling documentation from Cascadia, and Dr. Jenkins' February, 2003 evaluation,

Dr. Kolilis concluded that Mr. Brackenbury "may have participated in counseling merely as an effort to qualify for General Assistance or SSI, and that his depression may not have been as severe as his complaints."

Nevertheless, Dr. Kolilis diagnosed Mr. Brackenbury with adjustment disorder, social phobia, and avoidant personality disorder, with a GAF of 45. He opined that Mr. Brackenbury could execute "simple one-to-two step instructions, depending on the way that those instructions are conveyed." He explained that Mr. Brackenbury would work best in a non-threatening and encouraging environment, with less social interaction and less supervision. Thus, assuming a low anxiety-inducing work environment, Dr. Kolilis opined that Mr. Brackenbury would experience only slight limitations in the ability to make judgments on simple work-related decisions, moderate limitations in the ability to understand, remember, and carry out detailed instructions, moderate limitations in the ability to interact appropriately with the public and supervisors, and to respond appropriately to pressures in the usual work setting, and slight limitations in the ability to interact appropriately with co-workers, and to respond appropriately to changes in a routine work setting.

The ALJ credited Dr. Kolilis' assessment, except the GAF score of 45 (discussed below), and concluded that Mr. Brackenbury had indeed improved by September, 2003. I find no merit to Mr. Brackenbury's contrary contention, or to his argument that Dr. Kolilis's opinion establishes ongoing equivalency to Listed Impairment 12.04, based on depressive disorder. To the contrary, Dr. Kolilis questioned Mr. Brackenbury's subjective reports regarding his history of depression, and found his depression was situational, related to his unemployment and resulting financial dependence on his father.

### C. Dr. Davis

Robert Davis, Ph.D., testified at the second hearing on February 24, 2004, as a medical expert. Based on his assessment of the record medical evidence he opined that Mr. Brackenbury equaled Listed Impairment 12.04 during the period from January, 2001 through February, 2003, because he had moderate limitation in activities of daily living, marked limitations in social functioning, and moderate limitations in concentration, persistence and pace. Plus, Mr. Brackenbury had one or two episodes of decompensation during that period. However, Dr. Davis testified that before and after that period, Mr. Brackenbury was only moderately limited in all these areas except that he had a marked limitation in public interaction.

Dr. Davis opined that prior to January, 2001 and after February 2, 2003, Mr. Brackenbury could work in a job where he was "not around many people and not under constant supervision." Dr. Davis concurred with Dr. Kolilis's opinion that the key to Mr. Brackenbury's success in any work environment was avoiding situations that would arouse his anxiety. However, he testified that given Mr. Brackenbury's activities of daily living – such as playing basketball for up to two hours a day, daily bike riding, visits to the public library, housekeeping, several hours of reading and writing each day, and getting along with family members – his limitation in public interaction was probably much milder than Dr. Kolilis opined.

Dr. Davis testified that in his opinion Mr. Brackenbury's GAF score was higher than 45 – the score assessed by Dr. Jenkins and Dr. Kolilis. Dr. Davis explained, for example, that Dr. Kolilis's report was internally inconsistent in that he diagnosed an "adjustment disorder with depressed mood chronic" but, an "adjustment disorder, by definition, can last only six months."

Therefore, the ALJ deferred to Dr. Davis on the issue of the GAF score. I find this to be a specific and legitimate reason for rejecting Dr. Jenkins and Dr. Kolilis' GAF scores.

Nevertheless, even if the ALJ had credited the GAF scores, they would not support a finding of ongoing equivalency to Listed Impairment 12.04, because a GAF score is only an estimate of a claimant's overall level of functioning, and will not alone suffice to show medical equivalency to the "symptoms, signs and laboratory findings" specified for a listed impairment. See DSM-IV 30 (4th ed. 1994). Furthermore, Dr. Jenkins and Kolilis' functional limitations assessments accompanying these low GAF scores controvert Mr. Brackenbury's allegation of ongoing equivalency.

**II.     Substantial evidence supports the ALJ's assessment of Mr. Brackenbury's RFC.**

A claimant's RFC is the most an individual can still do despite his limitations. SSR 96-8p. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Id.

In the instant case the ALJ found Mr. Brackenbury had the RFC to perform light work, limited by numerous additional restrictions, listed above, prior to January 1, 2001 and after February 1, 2003. Mr. Brackenbury alleges the ALJ wrongly rejected a number of exhibits in the record during the RFC assessment, such as Dr. Jenkins' and Dr. Kolilis's reports, discussed above, progress notes written by his counselor at Cascadia, and the limitations assessed by a vocational rehabilitation counselor. Finally, Mr. Brackenbury notes that the ALJ found his

testimony, and his siblings' testimony, less than fully credible, though he does not allege error in this finding.

Having found substantial evidence in support of the ALJ's assessment of the medical evidence in this case, and since Mr. Brackenbury does not specify which limitations these sources assessed that the ALJ allegedly failed to incorporate into his RFC assessment, I find no merit to this allegation. As Mr. Brackenbury does not allege the ALJ erred by rejecting his own and his siblings' testimony, I find no dispute to resolve in this regard. The remaining evidence – counselor's notes from Cascadia, and a vocational rehabilitation evaluation – is not acceptable medical evidence, as defined by 20 C.F.R. § 416.913. Therefore, it is considered lay witness testimony. The ALJ must account for lay witness testimony and provide germane reasons for rejecting it, but he is not required to discuss non-probative information. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Mr. Brackenbury attended counseling at Cascadia from May, 2002 until October, 2002, when he voluntarily stopped going. The ALJ noted that Mr. Brackenbury's counselor, Mimi Harmer, diagnosed depressive disorder and borderline intellectual functioning, noting that Mr. Brackenbury was at times dirty, disheveled, dysphoric, lethargic and fatigued. In addition, Ms. Harmer opined that Mr. Brackenbury had marked to moderate restrictions in activities of daily living, marked limitations in social functioning, and that his ability to concentrate was "greatly impaired." However, after his last appointment in October, 2002, Mr. Harmer stated that Mr. Brackenbury appeared "stable on his medications and did not have any further goals to pursue in counseling." In December, 2002, after Mr. Brackenbury failed to show up for

appointments, he was terminated from Cascadia's program. Since the ALJ found Mr. Brackenbury to be disabled during the entire time he attended counseling at Cascadia, I find no merit to Mr. Brackenbury's contention that the ALJ failed to credit Ms. Harmer's opinion.

Mr. Brackenbury contends the ALJ erroneously omitted the limitations assessed in a vocational rehabilitation evaluation from October, 2000, in his RFC assessment. This evaluation, performed by "vocational counselors" states that Mr. Brackenbury's "[m]otivation appears to be low in regard to securing employment, noting that on job interviews he stated "he could not work weekends because he wanted to watch sports," that he could not work in cold temperatures, and he could not work the night shift because he was unable to sleep during the day.

In his final written decision, the ALJ incorporated by reference his review and analysis of the vocational rehabilitation evaluation from his first decision. He found the limitations it contained to be based on Mr. Brackenbury's subjective allegations, not medical evidence, and since he found Mr. Brackenbury not credible, he discredited them. I find this to be a germane reason to discredit lay testimony. Thus, I reject Mr. Brackenbury's contention that the ALJ should have included these limitations in his RFC assessment.

### III. Substantial evidence supports the ALJ's step five determination.

At step five of the sequential evaluation the Commissioner must show that the claimant can do other work which exists in the national economy. Andrews, 53 F.3d at 1043. The Commissioner can satisfy this burden either by applying the guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2, or by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. Id. If a claimant has functional limitations or work

restrictions which prevent him from performing the full range of work at a given exertional level, the guidelines cannot be used at step five to determine whether he is disabled. Instead, the ALJ must elicit testimony from a VE to determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions. <u>Tacket</u>, 180 F.3d at 1103-04.

Here, since Mr. Brackenbury's RFC did not allow for a full-range of work at any given exertional level, the ALJ elicited the expert opinion of a VE. He asked the VE to consider whether a hypothetical worker with Mr. Brackenbury's age, education (based on an eighth grade reading level and six grade math skills), work experience, and RFC could perform other work. Since I find the vocational hypothetical set forth all of Mr. Brackenbury's limitations that were supported by substantial evidence in the record, the ALJ reasonably adopted the VE's testimony. <u>Id.</u> The VE testified that this hypothetical person could perform other work, such as small products assembler, electronics worker, semi-conductor bonder, and wire worker. Accordingly, I find substantial evidence to support the ALJ's determination that Mr. Brackenbury was not disabled prior to January 1, 2001, or after February 1, 2003, because he remained capable of performing work existing in significant numbers in the national economy.

## **CONCLUSION**

Based on the foregoing, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this   26th   day of January, 2006.

                                          Michael W. Mosman  
                                          MICHAEL W. MOSMAN  
                                          United States District Judge